UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE: COMPLAINT OF <br> JOHN GOOD AS OWNER OF THE <br> F/V ALOSA, FOR EXONERATION <br> FROM OR LIMITATION OF LIABILITY | Case No. 19-CV-12514-AK |

**MEMORANDUM AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**A. KELLEY, D.J.**

This case arises out of injuries suffered by Claimant Cindy Hurwitz ("Ms. Hurwitz") when she fell onto the F/V ALOSA, a commercial shipping vessel belonging to Plaintiff and Third-Party Plaintiff John Good ("Good"), while working for Third-Party Defendant Wildfish, LLC ("Wildfish"), unloading totes of fish from Good's ship. Good filed a complaint for exoneration from or limitation of liability, pursuant to 46 U.S.C. §§ 30501 *et seq.*, requesting, among other things, that the Court adjudge him not liable for any injury Ms. Hurwitz sustained.[1] [Dkt. 1 at 4]. After Ms. Hurwitz filed a claim of negligence against Good [Dkt. 21], Good filed a third-party complaint against Wildfish [Dkt. 31], seeking contribution and indemnification and alleging that Wildfish was negligent in hiring, training, and accounting for the safety of Ms. Hurwitz. Pending before the Court are Wildfish's third-party motion for summary judgment [Dkt. 64], which Good opposes [see Dkt. 68], and Good's cross-motion for summary judgment as to Ms. Hurwitz's claim [id.]. Ms. Hurwitz opposes Good's motion for summary judgment.

---

[1] After an initial appraisal process, Good's vessel, including any pending freight at the conclusion of the voyage on the date of Ms. Hurwitz's accident, was valued at $45,000, and the Court approved that appraisal. [Dkts. 7-9]. The Court ordered the issuance of notice and restraining suits [Dkts. 19, 20] on February 20, 2020, directing the Clerk of Court to issue notice "to all persons asserting claims with respect to which the Complaint seeks limitation admonishing them to file their respective [c]laims … on or before May 15, 2020." [Dkt. 18 at 1]. Such notice was ordered published in The Cape Cod Times pursuant to Rule 4(F) of the Supplemental Rules for Admiralty or Maritime Claims. [Id. at 2].

1

[Dkt. 74]. The Court held a motion hearing on February 16, 2022. For the reasons set forth below, Good's cross-motion for summary judgment [Dkt. 68] is **GRANTED**. In accordance with that ruling, Good's third-party complaint [Dkt. 31] against Wildfish is **DISMISSED AS MOOT**, and Wildfish's motion for summary judgment [Dkt. 64] is **DENIED AS MOOT**.

## I. BACKGROUND

At the center of this matter is whether Good is liable in negligence to Ms. Hurwitz for the injuries she sustained from a fall she suffered while unloading fish from his vessel, the F/V ALOSA. If he is not, his claims for contribution and indemnification against Wildfish are moot. If he is, the Court must examine the many legal and factual arguments Good and Wildfish raise regarding Wildfish's liability. In the interest of efficiency and because the Court finds that Good is not liable in negligence to Ms. Hurwitz, only those facts that are relevant to the resolution of that issue are recited below. The following facts are drawn from the parties' collectively filed unified statement of material undisputed facts [Dkt. 77 ("SOF")] and are undisputed unless otherwise indicated.

Good is a commercial fisherman and owner of the F/V ALOSA. [Id. at ¶ 148]. That vessel was fitted with a hydraulic "take–out boom" to lift totes of fish off the boat. [Id. at ¶ 151–52]. A tote of fish can weigh between 60–180 pounds. [Id. at ¶ 118]. The operator of the vessel—Good, at relevant times here—uses the mechanical boom to lift the totes up, and workers (generally referred to as longshoremen or stevedores, who employ the longshoremen) on the dock, who are not employed by Good, pull the totes toward and land them on the dock. [Id. at ¶ 153; see Dkt. 74–1 at 3 (Good noting that he would raise the totes "[i]nches" above the pier)]. Wildfish is a seller of fresh fish that ships its products interstate and internationally. [SOF at ¶ 95]. Good began selling his fish to Wildfish in 2006. [Id. at ¶ 149]. Ms. Hurwitz was hired by

her husband, Scott Hurwitz ("Mr. Hurwitz"), Wildfish's Logistics Coordinator, in April 2018, to work in the shop and later to work as a truck driver and vessel unloader. [Id. at ¶¶ 2, 21, 23, 147]. In the latter role, Ms. Hurwitz was responsible for driving a truck to a job site, unloading totes of fish from vessels while standing on a pier, and loading that catch onto the truck for transportation to its next destination.[2] [Id. at ¶¶ 26, 72].

On November 18, 2018, while trying to unload totes of fish from the F/V ALOSA, Ms. Hurwitz fell from a public pier in Sandwich, Massachusetts, onto the deck of the F/V ALOSA and sustained personal injuries. [Id. at ¶¶ 1–3]. She had successfully unloaded totes from Good's vessel earlier that day. [Id. at ¶¶ 76–77]. Just prior to Ms. Hurwitz's fall, Good had hooked up two 125–pound fish totes to the F/V ALOSA's take–out boom to lift and transfer them to Ms. Hurwitz, who was standing on the pier to receive and place them on the dock. [Id. at ¶¶ 122, 151–53, 157; see Dkt. 74–2 at 5 (Mr. Hurwitz stating that the F/V ALOSA usually unloaded two or three totes at a time)]. Ms. Hurwitz used a "boat hook," as trained by Mr. Hurwitz, to guide the totes of fish being lifted off the vessel onto the pier by putting the hook in the handle of the fish totes. [Id. at ¶¶ 47, 57, 72, 77, 132]. Vessels commonly list (tilt) away from the dock when totes are hoisted up and pulling on the totes creates a pendulum effect. [Id. at ¶¶ 81, 123]. Letting go of a boat hook when it pulls away from the dock helps to preserve the safety of the person using the boat hook. [Id. at ¶ 85]. When the F/V ALOSA's take–out boom, its totes, and Ms. Hurwitz's boat hook began to swing away from her and back over the water on this particular occasion, Ms. Hurwitz failed to let go of the boat hook she had attached to the totes, which pulled her over the edge of the dock. [Id. at ¶ 80]. Ms. Hurwitz let go of the hook only when she knew she was falling. [Id. at ¶ 134]. Had Ms. Hurwitz let go of the boat hook

---

[2] Good contests this list constitutes a complete statement of Ms. Hurwitz's duties as an unloader/truck driver, but not that Ms. Hurwitz was responsible for the duties listed here. [SOF at ¶ 26].

earlier, the fall never would have happened. [Id. at ¶ 83]. Ms. Hurwitz had successfully unloaded the F/V ALOSA approximately 10-20 times previously. [Id. at ¶¶ 74–75].

The parties provide many more facts as they relate to Wildfish's training of its employees (and potential negligence) and Ms. Hurwitz's workers compensation claim against Wildfish, among other topics. Good and Wildfish also dispute the impact of the Massachusetts Workers Compensation Act, Mass. Gen. Laws ch. 152, §§ 1 et seq., and the Longshore and Harbor Workers Compensation Act, 33 U.S.C. §§ 901 et seq., on Good's ability to seek contribution and indemnification from Wildfish. The matter, however, can be resolved without reaching these issues. As explained below, the Court finds that Good did not breach a duty and cause Ms. Hurwitz's accident, and it limits its discussion accordingly.

## II. LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (citing Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). Summary judgment may be granted when the record, viewed in the light most favorable to the non-moving party, presents no "genuine issue of material fact," and the moving party is entitled to judgment as a matter of law. Paul v. Murphy, 948 F.3d 42, 49 (1st Cir. 2020). The Court must consider (1) whether a factual dispute exists; (2) whether the factual dispute is "genuine," such that a "reasonable fact-finder could return a verdict for the nonmoving party on the basis of the evidence"; and (3) whether a fact genuinely in dispute is material, such that it "might affect the outcome of the suit under the applicable substantive law." Scott v. Sulzer Carbomedics, Inc., 141 F. Supp. 2d 154, 170 (D. Mass. 2001); see also Napier v. F/V DEESIE, Inc., 454 F.3d 61, 66 (1st Cir. 2006). Courts must evaluate "the record and [draw] all reasonable inferences therefrom

4

in the light most favorable to the non-moving parties." Est. of Hevia v. Portrio Corp., 602 F.3d 34, 40 (1st Cir. 2010) (citing Houlton Citizens' Coal. v. Town of Houlton, 175 F.3d 178, 183–84 (1st Cir. 1999)). A non-moving party may "defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trialworthy issue persists." Paul, 948 F.3d at 49 (citation omitted). "Where, as here, a district court rules simultaneously on cross-motions for summary judgment, it must view each motion, separately, through this prism," and "may enter summary judgment only if the record, read in this manner, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Hevia, 602 F.3d at 40 (internal citations omitted).

### III. DISCUSSION

Good filed his complaint for exoneration from or limitation of liability pursuant to 46 U.S.C. §§ 30501 *et seq.*, formerly 46 U.S.C. §§ 181 *et. seq.*, on December 13, 2019. [Dkt. 1]. When analyzing petitions for exoneration under 46 U.S.C. §§ 181 *et. seq.*, the Court must first "determine whether negligence or unseaworthiness caused the accident." Carr v. PMS Fishing Corp., 191 F.3d 1, 4 (1st Cir. 1999). The Court must then "determine whether the shipowner was privy to, or had knowledge of, the causative agent (whether negligence or unseaworthiness)." Id. Here, Ms. Hurwitz alleges negligence, not unseaworthiness. [Dkt. 21 at ¶ 5]. The initial burden of persuasion, which requires a preponderance of the evidence, is on the claimant—Ms. Hurwitz—and, if met, the burden shifts to the shipowner to "establish its lack of privity and knowledge." Id. To establish negligence under general maritime law, the claimant must "demonstrate that there was a duty owed by the [defendant] to the [claimant], breach of that duty, injury sustained by [the claimant], and a causal connection between the [defendant's]

conduct and the [claimant's] injury.'" Evans v. Nantucket Cmty. Sailing, Inc., 582 F.Supp.2d 121, 137 (D. Mass. 2008).

A "vessel may be liable to a longshore worker only when the vessel, whether acting jointly with the stevedore or individually, breached a duty it owed the injured worker." Davis v. Portline Transportes Mar. Internacional, 16 F.3d 532, 540 (3d Cir. 1994). The parties define Good's duty differently. Good defines his duty of ordinary care as providing "a vessel in such a condition that 'an expert and experienced stevedore [would] be able to exercise reasonable care to carry on its cargo operations with reasonable safety'" and as a "duty to warn the stevedore of any latent safety defects on the vessel not reasonably discoverable by an 'expert and experienced' stevedore." Keller v. United States, 38 F.3d 16, 22 (1st Cir. 1994) (quoting Scindia Steam Navigation Co. v. de los Santos, 451 U.S. 156, 166-67 (1981)). Ms. Hurwitz counters that Good owed her an "active control" or "active operations" duty. [Dkt. 74 at 2–3]. A shipowner is liable for breach of this duty if he "actively involves itself in the cargo operations and negligently injures a longshoreman" or "fails to exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas, or from equipment, under the active control of the vessel [shipowner] during the stevedoring operation." England v. Reinauer Transp. Cos., L.P., 194 F.3d 265, 270 (1st Cir. 1999) (citing Scindia, 451 U.S. at 167). The Third Circuit has identified four elements necessary to establish a prima facie breach of the active control duty: (1) the defendant "appreciated, should have appreciated, or with the exercise of reasonable care would have appreciated the condition" leading to the injury; (2) the defendant "knew, or should have known, that the condition posed an unreasonable risk of harm to a longshore worker"; (3) a longshoreman "foreseeably might fail to (i) either discover the condition or apprehend the gravity and probability of harm, or (ii) protect himself or herself against the danger"; and (4) the

6

defendant "failed to take reasonable precautionary or remedial steps to prevent or eliminate the dangerous condition." Davis, 16 F.3d at 541.  The active control duty "recognizes that although a vessel owner no longer retains the primary responsibility for safety in a work area turned over to an independent contractor, no such cession results as relates to areas or equipment over which the vessel's crew retains operational control." England, 194 F.3d at 272–73 (quoting Manuel v. Cameron Offshore Boats, 103 F.3d 31, 34 (5th Cir. 1997)).  Under either standard, Ms. Hurwitz has failed to establish that Good breached his duty of care.

      The totes of fish on the F/V ALOSA were raised using the vessel's take–out boom and had to be pulled to the pier by Ms. Hurwitz, who had successfully unloaded Good's vessel approximately 10-20 times previously. [SOF at ¶¶ 74–75, 122].  All parties agree that pulling on the totes creates a pendulum effect and that it is common for vessels to list (tilt) away from the pier when totes are hoisted up.  [Id. at ¶¶ 81, 123].  All parties also acknowledge that letting go of the boat hook attached to the tote if it pulls away preserves a person's safety.  [Id. at ¶ 85]. None of the facts suggest that the take–out boom had any defects, obvious or latent, or that Good's operation of the take–out boom that day was unreasonable.  Instead, the undisputed facts establish that vessels commonly list away from the dock when totes are hoisted and pulled toward the pier, a condition that any longshoreman whose responsibilities include unloading totes of fish from docked vessels would foresee and account for when carrying out cargo operations, especially if they had unloaded that particular vessel before.  Ms. Hurwitz has not shown that Good's equipment or operation of the take–out boom on the day of her accident created an unreasonable and, on her part, unforeseeable risk of harm and has therefore not met her burden of establishing that Good breached a duty of care.

Ms. Hurwitz argues that Good breached a duty to her because he had concerns about Ms. Hurwitz's physical stature and body positioning on the day of the accident, could see that she was not in the proper position to receive the totes, and did not warn her prior to her fall. [Dkt. 74 at 4]. None of those facts, even if supported by evidence in the record, relate to Good's active control duty as to the area in which the accident occurred or "to <u>equipment</u> over which the vessel retains control." <u>England</u>, 194 F.3d at 273 (emphasis in original). The mere fact that Good observed the events leading up to Ms. Hurwitz's fall and her actual fall does not create liability for Good, particularly when the feet positioning and Ms. Hurwitz's failure to let go of the hook happened instantaneously or within seconds of each other. Nor does Ms. Hurwitz present any evidence that Good could have and should have stopped the ship from its known, natural tendency to list in the water on that specific day.[3] Ms. Hurwitz also states, in a cursory fashion, that Good is liable for negligence because he failed to use the crane on the dock, rather than the take–out boom on his vessel, to unload the totes of fish. [<u>See</u> Dkt. 74 at 4]. However, the evidence she provides in support of that argument falls short. She claims that Good had been asked to use the dock crane at Sandwich "because it was dangerous to unload the vessel" using the take–out boom. [<u>Id.</u>]. But the depositions she cites in support of that fact, including her own, do not support that statement. Rather, the deposition testimony reveals that Mr. Hurwitz instructed other longshoremen to request to use the dock crane when unloading the F/V ALOSA in Plymouth, Massachusetts [Dkt. 74–2 at 5], and that Ms. Hurwitz stated the simple fact that dock cranes are stationary, unlike take–out booms, and that Mr. Hurwitz told her that he told Good he preferred to use the dock crane at Sandwich. [Dkt. 74–3 at 3-4]. None of that

---

[3] Ms. Hurwitz cites only to Good's deposition testimony as to what is *generally* done to address a ship's list. [<u>See</u> Dkt. 74–1 at 5]. This testimony says nothing about the list of the F/V ALOSA and Good's actions on the day of Ms. Hurwitz's accident.

testimony supports Ms. Hurwitz's statement that using the take–out boom was too "dangerous" or that Good was told of that specific concern. In fact, that evidence suggests that Ms. Hurwitz preferred the dock crane because it was closer to where she loaded her truck. [See id. at 2]. Moreover, the availability of a dock crane still does not suggest that Good breached any duty owed to Ms. Hurwitz. Good's duty relates to the "areas or equipment over which the vessel's crew retains operational control." England, 194 F.3d at 272–73. That fact that there was an alternative available to Good does not suggest that his use of the take–out boom presented an unreasonable risk of harm to Ms. Hurwitz. There is no evidence to suggest that Good's take–out boom had any latent safety defects, nor that he operated the take–out boom in a negligent manner that day. See Polak v. Riverside Marine Constr., Inc. 22 F. Supp. 3d 109, 132 (D. Mass. 2014) (noting that "there must be some condition of the vessel that caused or contributed to the plaintiff's injury" to hold the vessel owner liable).

Even if Good had beached a duty he owed to Ms. Hurwitz, Ms. Hurwitz has failed to meet her burden of establishing that Good's actions caused her fall and resulting injuries. Causation in general maritime law, much like in common law, requires the claimant to prove both the "but for" and "proximate or legal" causes of an accident. See Pariseau v. Capt. John Boats, Inc., No. CIV.A. 09-10624-JGD, 2012 WL 527652, at *14 (D. Mass. Feb. 16, 2012), aff'd, No. 12-1273, 2012 WL 13228649 (1st Cir. Sept. 13, 2012); see Sawyer Bros., Inc. v. Island Transporter, LLC, 887 F.3d 23, 29 (1st Cir. 2018) (noting that "the familiar elements of negligence—duty, breach, causation, and damages—apply in maritime cases"). An individual's conduct "is an actual, but-for cause of harm when that harm would not have occurred without it," and but-for causation is "often regarded as 'the minimum requirement for a finding of causation.'" United States v. Kilmartin, 944 F.3d 315, 327 (1st Cir. 2019) (quoting United States

9

v. Ortiz-Carrasco, 863 F.3d 1, 5 (1st Cir. 2017)).  Establishing proximate cause generally requires a plaintiff to "show that his or her injuries were within the reasonably foreseeable risks of harm created by the defendant's negligent conduct."  Brettel v. Omron Sci. Techs., Inc., 302 F. Supp. 3d 460, 465 (D. Mass. 2018) (citation omitted).  To find Good liable for negligence here, the Court must find that Good's "culpable act or omission" was "a substantial and material factor in causing" Ms. Hurwitz's harm.  Evans, 583 F. Supp. 2d at 144.  As explained, Ms. Hurwitz has not identified any culpable acts or omissions by Good that caused her harm.  Instead, she admits that her own conduct was the cause of her injuries.  The parties agree that while unloading two fish totes, Ms. Hurwitz "failed to let go of the boat hook when the hook began to swing away from her and over the water, which pulled Ms. Hurwitz over the edge of the dock."  [SOF at ¶ 80].  The parties, including Ms. Hurwitz, also agree that vessels commonly list away from the dock when totes are hoisted up, pulling on the totes creates a pendulum effect, and letting go of a boat hook when it pulls away from the dock preserves the safety of the person using the boat hook.  [Id. at ¶¶ 81, 85, 123].  The parties further agree that "[h]ad [Ms. Hurwitz] let go of the boat hook, [the fall] never would have happened."  [Id. at ¶ 83].  Since it is undisputed by all parties that Ms. Hurwitz was the actual cause of her fall and resulting injuries, her claim against Good fails in its entirety.

      The Court grants judgment in favor of Good as to Ms. Hurwitz's negligence claim against him.  See Dean v. McKie Co., 771 F. Supp. 466, 476 (D. Mass. 1991) (granting summary judgment where the plaintiff "presented no evidence whatsoever that would show any nexus between his injury and the condition of the vessel from which negligence could be reasonably alleged"); see also Woods Hole Oceanographic Inst. v. ATS Specialized, Inc., 514 F. Supp. 3d 369, 374 (D. Mass. 2021) (explaining that "although causation is typically a question of fact for

the jury, a plaintiff cannot avoid summary judgment if it is unable to 'show that there is greater probability than not that the accident resulted from the defendant's negligence'" (citation omitted)); Brettel, 302 F. Supp. 3d at 466 (stating that the "question of proximate cause is generally one for a jury to decide," though summary judgment may be appropriate "when the evidence and the reasonable inferences drawn therefrom lead to but one conclusion").  In light of these findings, the Court need not discuss Wildfish's efforts to train Ms. Hurwitz and any potential negligence on its part.  The parties have raised arguments regarding her training only within the context of Good's request for indemnification and contribution from Wildfish.  The summary judgment granted in favor of Good today renders those claims against Wildfish moot, and the Court therefore will not address Wildfish's motion further.

### IV.     CONCLUSION

For the foregoing reasons, Good's cross-motion for summary judgment [Dkt. 68] is **GRANTED**.  In accordance with that ruling, Good's third-party complaint against Wildfish [Dkt. 31] is **DISMISSED AS MOOT**, and Wildfish's motion for summary judgment [Dkt. 64] is **DENIED AS MOOT**.

**SO ORDERED.**

September 30, 2022                              /s/ Angel Kelley
                                                ANGEL KELLEY
                                                U.S. DISTRICT JUDGE